UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSEPH WASKO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 1:06-CV-37 |
| JOSEPH V. DIFILIPPO | ) ) ) | |
| Defendant. | ) | |

**OPINION**

On January 10, 2006, the Plaintiff, Joseph Wasko, filed his Complaint alleging that the Defendant, Officer Joseph Difilippo, violated his constitutional rights by using excessive force in detaining him. The Defendant moved for summary judgment on November 1, 2006. For the reasons stated below, the Defendant's motion is granted.

**A.     Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50

(1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**B.     Material Facts**

On the morning of June 29, 2005, at about 12:15 a.m., the Defendant was dispatched to investigate a hit/skip accident that occurred at the 1200 block of Nevada in Fort Wayne. Fort Wayne Police Dispatch informed the Defendant that the suspect vehicle was dark colored and last seen headed east on Nevada. Dispatch reported that the vehicle struck a curb, traveled a few

blocks, then turned south. The Defendant drove to the scene and found auto parts where the accident reportedly took place. The Defendant determined from the front spoiler and air filter laying on the ground that he was looking for a dark colored Saab.

After about ten minutes, the Defendant observed the vehicle traveling down Vermont near Lakeside Park, between Florida and Forest Park Boulevard. The Defendant saw the vehicle turn into an alley, and he followed it. The vehicle stopped, and the driver exited the vehicle and ran down Florida Avenue. The driver crossed a number of yards. He then turned east and ran between the residences on Florida Avenue.

Officer Art Norton, who was looking for the same vehicle, told the Defendant that the driver crossed an alley and hopped a six foot wooden privacy fence into the yard of a residence located at the northwest corner of Forest Park Boulevard and Vermont. The Defendant parked his squad car adjacent to the residence and began to search on foot. He observed the driver come around the side of this residence. The individual the Defendant saw was the Plaintiff. The Plaintiff is described in the Defendant's arrest report as being 5'6" and 130 pounds.

The Defendant ordered the Plaintiff to stop and get on the ground, and he complied. The Plaintiff states that when he was on the ground, he had his hands outstretched above his head, and the Defendant physically put them behind his back and slapped the cuffs onto his wrists.

After checking the Plaintiff's pockets, the Defendant decided to bring the Plaintiff to his feet. The Defendant never told the Plaintiff to get up or said anything else to him. According to the Plaintiff, the Defendant grabbed the chain of the Plaintiff's handcuffs with his right hand and attempted to pick him up. The Plaintiff tried to get up, but fell forward with his face on the ground. He went forward because he was top heavy. The Plaintiff struggled to get his feet

underneath himself and he scraped his knee falling forward.

When the Defendant saw the Plaintiff was unable to get up, he placed his left hand on one of the Plaintiff's arms and tried to help him up. At this point, the Plaintiff slipped out of the Defendant's hand and fell back to the ground. The Defendant then grabbed the Plaintiff's shoulder with his left hand, and lifted him onto his feet. The entire time he had his right hand on the handcuffs. It took up to 30 seconds from the time the Defendant first tried to get the Plaintiff on his feet until they were successful. It was a hot evening and the Plaintiff says he was pretty sweaty. The Plaintiff did not in any way resist and was cooperative.

At some point while the Defendant was holding onto the handcuff chain, the handcuffs slid over the bone on the Plaintiff's wrist and rubbed off some of his skin. The Plaintiff says he felt his wrist pop. The Plaintiff "hollered a little bit because of the pain," but never said anything else until he was on his feet. (Pl. Dep. 31, DE 37-4.) Later he learned that the tip of a bone in his wrist was fractured.

The Defendant walked the Plaintiff to the squad car. The Plaintiff told the Defendant that he needed a doctor and that his wrist hurt. The Defendant said he would get to that, but that he needed to ask him some questions. The Defendant questioned the Plaintiff.

While the Defendant questioned the Plaintiff, Officer Norton visited the owner of the Saab. The owner said his vehicle was missing. Norton took a stolen vehicle report and returned the vehicle to the owner. The Defendant then advised the Plaintiff that he was under arrest for receiving stolen auto parts.

The Defendant brought the Plaintiff to Allen County Jail, where the Plaintiff was given a breathalyzer test. The test showed that he had a blood alcohol level of .14%. After being

transported to the jail, the Plaintiff had no further contact with the Defendant. The Plaintiff admits he was intoxicated, but states he had control of his actions and was aware of his surroundings.

C.     **Defendants' Motion to Strike**

The Defendant moves to strike the Plaintiff's affidavit, arguing that it contradicts his deposition testimony. The Court agrees with some of the Defendant's objections. Where the Plaintiff has attempted to "manufacture an issue of fact by adding the gloss of a subsequent affidavit to an earlier deposition," the added gloss has no effect. *Cherry v. Am. Tel. & Tel. Co.*, 47 F.3d 225, 232 (7th Cir. 1995).

The Plaintiff's affidavit adds a few facts that contradict what he said in his deposition. It states that the Defendant dragged the Plaintiff until he saw that he was unable to stand up. In his deposition, the Plaintiff does not say anything implying that he was carried forward by the Defendant. He says when the Defendant picked him up by the handcuff chain, he was lifted off the ground and he went forward. He implies that he went forward because he was "top heavy." (Pl. Dep. 26, DE 37-4.) He cannot now say that the Defendant dragged him forward.

The Plaintiff's affidavit states that the Defendant grabbed the handcuff chain and "jerked upwards violently." (Pl. Aff. 3, DE 42-2.) The Plaintiff did not say or imply at his deposition that he was jerked violently upwards. In his deposition, the Plaintiff said the Defendant tried to pick him up by the handcuffs, and that he felt the Defendant pull him up. Being picked up, and being jerked upwards violently are different actions. The Plaintiff's attempt to recharacterize his deposition testimony is not taken into account.

6

The other evidence the Defendant objects to is not relevant for purposes of this Opinion. The Defendant's motion to strike is granted in part, as stated above.

**D.      Excessive Force Claim**

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). If an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," the officer's actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "Of course, the 'calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Fox v. Pittinger*, 2005 WL 1712216, *8 (N.D. Ind. 2005) (quoting *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d

7

767 (7th Cir. 2003). The reasonableness of force is a legal issue, as juries do not determine what limits the Constitution places on official conduct. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003).

Here, the Plaintiff was not actively resisting or attempting to evade and did not pose an immediate threat to the Defendant's safety after he was handcuffed and frisked. However, it was late at night, the Plaintiff was drunk and shirtless, and he had been apprehended after fleeing through some residential neighborhoods. Because of the situation, a reasonable officer would treat the Plaintiff with caution. Also, the process of getting a drunk and handcuffed individual onto his feet required some force.

The Defendant's conduct as described by the Plaintiff can only be understood as an effort to bring the Plaintiff to his feet. The Plaintiff stated that when the Defendant saw him struggling to get his feet under him, he grabbed his arm to assist. When the Plaintiff slipped back to the ground, the Defendant again hoisted the Plaintiff off the ground, this time, using his left hand to pull on the Plaintiff's shoulder. It cannot reasonably be inferred from the Plaintiff's account that the Defendant pulled on the Plaintiff's handcuff chain as a gratuitous attack. He pulled on the chain to bring the Plaintiff to his feet, which was in furtherance of a government purpose.

The Plaintiff states in his deposition that he hollered a bit due to the pain in his wrist; he does not say he told the Defendant what the matter was. A bit of hollering from a drunken suspect would not have made a reasonable officer aware that the suspect was in serious pain. In any event, the Plaintiff says that when the Defendant saw that he could not get to his feet, the Defendant grabbed his arm to help him.

The governmental interest at stake was getting the drunk and shirtless Plaintiff off the

8

ground and into the squad car. Neither side presents any evidence as to whether the method allegedly used to get the Plaintiff onto his feet had any unique benefit over other methods. The intrusion at issue is the risk of injury arising from the method chosen. In this case, the force involved in lifting the Plaintiff was sufficient to cause a small fracture in his wrist, but neither side presents any evidence as to whether the method allegedly used to get the Plaintiff onto his feet carried any unique risks of harm that does not exist with other methods. The parties have presented no caselaw on techniques to bring suspects to their feet, and the Court has found little.

This lack of information weighs against the Plaintiff because a plaintiff bringing a § 1983 claim has the burden of showing a violation of his constitutional rights, in this case, that the use of force was unreasonable. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 595 (7th Cir. 1997) ("Absent any evidence to prove that the officers in this case were unreasonable in their handling of Mr. Phillips once he was cuffed on the floor, the reasonableness question ought not be submitted to a jury.") The Plaintiff has not presented any evidence on whether there were alternative methods available to lift a drunk and sweaty suspect off the ground and onto his feet that would be as safe for the officer and less likely to cause injury to the suspect. Without any evidence of alternative methods, the Court cannot say that a reasonable officer would not use the method allegedly used by the Defendant. The fact that the Plaintiff was injured when the Defendant lifted the Plaintiff by the handcuff chain does not by itself show the Defendant used unreasonable force. *Phillips*, 123 F.3d at 594–95.

In hindsight, the Court can imagine other possible ways the Defendant might have used to bring the Plaintiff to his feet that may have been less likely to cause injury. However, the Court's speculation is not sufficient to find the Defendant's use of force objectively

unreasonable. The Plaintiff has not presented sufficient evidence for the Court to hold that the Defendant's alleged use of force in bringing the Plaintiff to his feet was objectively unreasonable. Therefore, even if a jury believed the entirety of his testimony, his claim could not succeed.

### E.     Qualified Immunity

Even if the Plaintiff could show that the Defendant's force was objectively unreasonable, he could not show that a reasonable officer would know such force to be unlawful.

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Id.* at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–202. It is the plaintiff's burden to show a defendant's

10

conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce case law showing the state of the law at the time of the officers' conduct was such that they had fair warning their conduct violated the Constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

       The Plaintiff presents no cases involving similar facts. The Court has found scant case law on the matter and finds that a reasonable officer would not have had fair warning that the Defendant's alleged conduct violated the Constitution.

       *Watts v. County of Sacramento*, 65 F. Supp. 2d 1111 (E.D. Cal. 1999), involved allegations of conduct similar to that alleged here. That Court held that "Defendants have failed to establish that lifting [plaintiff] by his handcuffs was a reasonable use of force." *Id.* at 1119–20. The *Watts* court also viewed the reasonableness of force as a jury question. *Id.* However, this Court views it is the Plaintiff's burden to show force to be unreasonable, and follows the Seventh Circuit's holding that the reasonableness of force is a question of law for the Court. Because *Watts* did not determine whether picking up a suspect by the handcuffs is reasonable force, and held only that there was a jury question as to the reasonableness of the conduct, it could not have put an officer on notice that the Defendant's conduct was unreasonable.

       Other cases found by the Court involving pulling on handcuff chains do not involve attempts to bring drunken, handcuffed suspects to their feet. *See, e.g.*, *Tekle ex rel. Tekle v. United States*, 457 F.3d 1088, 1095 (9th Cir. 2006) (holding that it constituted excessive force

11

for twenty officers to point guns at, and handcuff an eleven year old boy who was not a suspect and noting that lifting boy by chain of cuffs could be excessive force); *Phillips v. Irvin*, 2006 WL 1663677, \*14 (S.D. Ala. 2006) (holding that it constituted excessive force for officer to violently jerk on chain of standing arrestee's cuffs, disregard pleas to loosen cuffs, and bump arrestee's head into car when arrestee was arrested for interfering with a traffic stop and posed no threat); *Taylor v. Miller*, 2006 WL 249633, \*5 (W.D. Okla. 2006) (lifting handcuffed suspect by handcuffs, slamming suspect into side of car, jumping on suspect laying on car floorboards, and choking non-resisting suspect constitutes excessive force). One case held that jerking a suspect to her feet by handcuffs without any intent to harm and without causing any harm does not constitute excessive force. *See Kyles v. Chi. Police Officer M. Thiel*, 2004 WL 1630776, \*1 (N.D. Ill. 2004).

This is not a case where a plaintiff alleges to have been an innocent citizen assaulted without any provocation. *See Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). The Plaintiff does not describe a gratuitous attack. The Defendant's conduct was in the context of getting a handcuffed suspect onto his feet. The case law is not such that the Defendant had fair warning his conduct was unlawful.

It has not been shown that pulling on the handcuffs of a suspect to bring the suspect to his feet has been judged unreasonable by any other court in this circuit. In light of the sparse and inconsistent case law the Court has found on the matter, the Court finds that it was not clearly established that the Defendant's alleged conduct was unreasonable so that a reasonable officer would have been on notice that such conduct was unlawful. If the Defendant was mistaken as to propriety of his conduct and the force used was excessive, he is protected by qualified immunity.

**ORDER**

The Defendants' motion to strike [DE 45] is GRANTED in part and DENIED in part.

The Defendants' motion for summary judgment [DE 36] is GRANTED.

SO ORDERED on March 19, 2007.

                                              s/Theresa L. Springmann
                                        JUDGE THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT